OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for various counts of murder in *750 the second degree and other related crimes. During the trial, the defense sought to offer evidence concerning the prior sexual conduct of the deceased. This written decision supplements the oral decision rendered during the trial granting the defendant’s application.
FINDINGS OF FACT
On November 9, 1992, David Schwartz was found stabbed to death in a room at the Whitestone Hutchinson Motel in Bronx County. On November 11, 1992, the defendant was arrested for the homicide after an investigation determined that his fingerprint was on a bottle at the scene and that he had used the victim’s credit cards after the murder.
Subsequent to his arrest, the defendant made oral and video statements concerning the crime. In substance, the defendant stated that he had met the victim the day before the homicide and the victim invited him to a professional football game that was scheduled for the following day. The defendant further stated that although the two met the following day for the purpose of attending the game, their plans inexplicably changed. They instead drove to Schwartz’s lavish Connecticut home where they spent some time.[1] Subsequently, they returned to the Bronx. The victim stopped to purchase beer, soup and a package of condoms. Thereafter, they traveled to the Whitestone Hutchinson Motel where the victim registered as "Lou Rothmeier.” Both entered the room. Schwartz then proceeded to massage the defendant’s neck. Thereafter, the deceased allegedly grabbed the defendant’s penis through his clothing. The defendant stated that he pushed the victim away and protested that he was not homosexual. The defendant claimed that nonetheless the deceased persisted. The defendant admitted pulling a knife that had been concealed in his jacket and stabbing Schwartz in the throat, chest and back approximately five times. Thereafter, the defendant admitted taking the deceased’s watch, wallet, and credit cards and leaving the scene. In both statements, the defendant identified pictures of the deceased as the man he knew as "Lou.”
During jury selection, the court and the attorneys questioned prospective jurors about their feelings concerning the possibility of a homosexual theme in the case. In their opening statement to the jury, the People described the victim as a *751 man who, although married with three children, had troubling secrets which were unknown to his family. The People introduced both the oral and video statements of the defendant into evidence on their direct case. Thereafter, the defense sought to introduce evidence of the victim’s alleged homosexuality to support the affirmative defense of extreme emotional disturbance flowing from an alleged unwanted sexual advance. The defendant sought to prove that the deceased had visited the motel with other young men on prior occasions. In its offer of proof, the defense proffered one young male witness to establish a previous liaison with the deceased at the same motel for the purposes of sexual activity. The second witness offered was a former clerk at the Whitestone Hutchinson Motel who observed Schwartz check into the motel accompanied by young men prior to the date of the homicide. The defense further sought to introduce four recent registration cards from the said motel in the name of "Lou Rothman”.
CONCLUSIONS OF LAW
CPL 60.43 prohibits the admission into "[e]vidence of the victim’s sexual conduct, including the past sexual conduct of a deceased victim [in a prosecution for any nonsexual offense] unless such evidence is determined by the court to be relevant and admissible in the interests of justice.” The proponent of the evidence must make an offer of proof outside the hearing of the jury and the court must make "a statement * * * of its findings of fact essential to its determination.” (CPL 60.43.) Enacted in 1990, the bill sought to "strike an equitable balance between a victim’s right to privacy and the defendant’s right to a fair trial [by permitting] the admission of any relevant evidence concerning the victim’s sexual history, while preventing the jury from hearing irrelevant or potentially prejudicial evidence.” (Governor’s Mem, 1990 McKinney’s Session Laws of NY, at 2750.)
Although modelled after CPL 60.42, the "rape shield law,” this section differs significantly. Evidence of a victim’s sexual conduct is admissible into evidence pursuant to CPL 60.42 without any special procedure if the evidence falls within the first four enumerated exceptions of the statute. There are no enumerated exceptions to CPL 60.43 and, in fact, a "presumption of irrelevance” of such evidence has been established by the "legislative judgment that the frequency of unjustified use of the victim’s prior sexual conduct * * * cloud[s] the relevant issues in criminal trials.” (Preiser, Practice Commentaries, *752 McKinney’s Cons Laws of NY, Book 11 A, CPL 60.43, at 15.)[2] However, the restriction against admission of such evidence "must be exercised with due regard for a defendant’s constitutional rights to adduce evidence in his or her own defense * * * and to adduce evidence that actually does tend to impeach the credibility of a prosecution witness.” (Ibid.) A distinction must be made "between use of prior sexual conduct to show the victim’s morality and the introduction of sexual conduct where it actually has some bearing on the case.” (Ibid.)
Evidence of the victim’s prior sexual conduct was excluded in the only two cases reported since enactment of this section. In People v Culver (192 AD2d 10 [3d Dept 1993]), a 1991 murder prosecution with a strikingly similar fact pattern, the male defendant claimed that he stabbed the male deceased because the deceased had made sexual advances toward him. The Court declined to admit evidence of the victim’s past sexual conduct. Evidence that the victim had pleaded guilty to sexual abuse in the second degree in 1978 was precluded as remote and irrelevant. Further, the Court precluded testimony from a woman who had testified in a Family Court proceeding against the deceased for sexual abuse of his daughter. "[T]he prior conviction involving, a child was both remote and distinguishable from the instant charges involving a 28-year-old man and * * * its exclusion did not interfere with defendant’s right to establish his defense.” (Supra, at 16.)
In the instant case, evidence of the deceased’s homosexual affairs is relevant in several respects. First, the evidence explains the reason why the defendant and victim were together in the motel room. Second, it tends to corroborate the defendant’s statement that the victim grabbed his genitalia. Third, it demonstrates the victim’s state of mind in escorting the defendant to the motel. Furthermore, it precludes speculation by the jury that the victim was exclusively heterosexual. Additionally, both sides mentioned this issue on voir dire and in their opening statements, either directly or indirectly. The evidence is not being used to show the deceased’s morality but actually has a significant bearing on the issues of this case.[3]
*753 The evidence to be admitted, recent homosexual liaisons with young men in the same motel, is particularly probative because it is exactly the same conduct as the conduct described during the trial. In addition, as the incidents in question occurred only months before the victim’s death, the evidence offered is clearly not remote. The facts of the prior sexual conduct in this case are clearly distinguishable from those noted in Culver and McGrath (supra).
Barring the evidence of the deceased’s prior sexual conduct in this case would abridge the defendant’s constitutional right to adduce evidence in his own defense. This is especially true in this case where the defendant claims that he suffered extreme emotional disturbance as a result of alleged unwanted sexual advances by the deceased. If believed, this evidence could lend support to the defense allegations. In addition, the prosecutor subtly alluded to the victim’s homosexual tendencies in his opening statement but elected not to establish it clearly during his case-in-chief. The defense has a right to close a relevant door that the prosecution has left open. Otherwise, the jury would be left free to speculate on this issue. Therefore, the evidence is admissible at trial.

. A fingerprint of the defendant was later found on a glass at the victim’s residence.

. "The law highlights the problems which were faced at trial by the model Marla Hansen who was facially scarred, and by the family of Jennifer Levin, who heard their daughter’s past sexual conduct revealed in the Robert Chambers case.” (Kamins, New Legislation Affecting the Practice of Criminal Law, 42 Brook Barrister 74, 79 [1991].)

. In a prosecution for reckless endangerment and criminal mischief *753 against a defendant for striking his ex-girlfriend’s car with his own, evidence of the victim’s past sexual conduct has absolutely no bearing on the defendant’s guilt. (People v McGrath, 195 AD2d 831, 833 [3d Dept 1993].)