OPINION OF THE COURT
Donald J. Mark, J.
The defendant, who was 39 years of age, was charged with the crimes of rape in the first degree and rape in the second degree as a result of his allegedly engaging in forcible sexual intercourse with a female who was 13 years of age. The defendant was properly tried in absentia (People v Larkin, 281 AD2d 915, 916), and the defendant’s attorney on his behalf indicated that inconsistent defenses would be proffered (People v Kalaj, 247 AD2d 633, 634), i.e., that the defendant had not engaged in sexual relations with the complainant (see People v White, 261 AD2d 653, 656, lv denied 93 NY2d 1029),[1] or that the parties had engaged in consensual sexual relations (see People v Wigfall, 253 AD2d 80, 81, lv denied 93 NY2d 981).[2]
These defenses evoked the application of CPL 60.42, the “rape shield law,” which “bars evidence of a complainant’s past sexual conduct unless one of the five statutory exceptions applies” (People v Williams, 81 NY2d 303, 311). In accordance with that decision an offer of proof as to evidence of all sexual allegations involving the complaint was made (id., at 313).
There was evidence concerning the results of the deoxyribonucleic acid (DNA) testing via the polymerase chain reaction (PCR) method of the semen in the complainant’s underpants (see People v Fontanez, 278 AD2d 933, 935), but there was no evidence concerning a comparison between those results and population genetics (see People v Terry, 286 AD2d 452, 453). Since this evidence advanced the position of each side, there was no objection interposed.
The defendant sought to introduce five sexually related statements of the complainant, all under subdivision (5) of that section, the “interest of justice” exception (see People v Jovanovic, 263 AD2d 182, 197), and one under subdivision (2), the “prostitution” exception (see People v Doe, 170 Misc 2d 762, 763), while the prosecutor objected that subdivision (5) was inapplicable (see People v Thompson, 267 AD2d 602, 603), as *177 well as subdivision (2) (see People v Mc Nab, 144 Mic 2d 612, 614).
Under subdivision (5) evidence óf a statement of past sexual conduct becomes inadmissible or admissible depending upon the reason for which it is offered (People v White, 261 AD2d 653, 656 [statement inadmissible to show victim was protecting her boyfriend];[3] People v Thompson, supra at 603 [statement inadmissible because it suggested victim had multiple sexual partners]; People v Labenski, 134 AD2d 907, 908 [statement admissible to explain semen was not that of defendant]; People v Crandall, 48 AD2d 946 [statement admissible to show victim had motive to falsely accuse defendant of rape]).[4]
The first statement — The complainant admitted that she had engaged in sexual relations with a male other than the defendant the day before the alleged rape.
This evidence in conjunction with evidence that semen was located in the complainant’s underpants is admissible (People v Labenski, supra at 908 [victim admitted that she had engaged in sexual relations with her boyfriend approximately three hours prior to the alleged rape and semen was found in her panties]); this evidence should have been admitted pursuant to subdivision (5), because without this testimony the jury could only conclude that the semen originated from the defendant (see People v Kalaj, supra at 633-634 [the defendant’s brother had a sexual encounter with the victim prior to the alleged rape and semen was recovered from the victim’s clothing; this evidence was inadmissible under subdivision (5) only because the defendant conceded that he had engaged in sexual relations with the victim]).
Although no comparison to population genetics was made, and the DNA testing demonstrated only that the defendant could not be excluded as the donor of the semen, this did not affect the probative value of this evidence (see People v Baldwin, 211 AD2d 638 [evidence of victim’s sexual activities in two-week period prior to the alleged rape to establish the possibility that semen on victim’s bed sheet came from source other than defendant was inadmissible where 19.4% of the black male population could be possible source of semen]; see People v Mount, 285 AD2d 899 [DNA evidence of semen found *178 on the victim’s underwear — other than the defendant’s — was inadmissible where defendant’s sperm was also found in the victim’s underwear and only the defendant’s sperm was found in the victim’s vagina]).
Since the defendant could not be excluded as the donor of the semen in the complainant’s underpants by the DNA evidence, but the same DNA evidence could not specifically identify him as the donor (see People v Horace, 172 Misc 2d 270, 271 n 1, affd 277 AD2d 957, lv denied 96 NY2d 784 [the odds that the defendant was the father of the child conceived as the result of a rape were an astronomical 680,000,000 to 1]), the admission of the complainant to a sexual encounter with a nondefendant the day before the alleged rape was admissible under subdivision (5) to establish the possibility that he was not the perpetrator of the alleged rape.
The second statement — The complainant admitted that she had engaged in prior sexual relations with two men she refused to identify.
This evidence is inadmissible under subdivision (5) {People v Williams, supra at 315 [defendants failed to articulate how white victim’s prior group sex with black males would be probative of the victim’s motive to falsely accuse the three defendants of rape]; People v Thompson, supra at 603 [misidentification by victim of father of her child was inadmissible, because it suggested she had multiple partners]; People v Crawford, 143 AD2d 141, 142 [evidence of the victim’s prior sexual history with men other than the defendant was inadmissible]).[5]
The third statement — The complainant stated that she had been previously raped on two occasions while she was too intoxicated to recall the details.
This evidence is admissible under subdivision (5), because the defendant should be allowed to show that the complainant had confused the two prior rapes and the present alleged rape (see People v Rogowski, 228 AD2d 728, 729 [cross-examination of victim was properly limited, because there was no showing that she was confused between sexual abuse by her father and sexual abuse by her uncle]). Also, prior sexual assault complaints do not fall within the proscription of this section (People v Benn, 213 AD2d 489)-probably, because they do not undermine the victim’s prior chastity (see People v Williams, supra at 312).
*179 The fourth statement — The complainant impliedly admitted that she had previously engaged in sexual relations for alcohol and drugs, because subpoenaed records referred to sexual promiscuity and alcohol/drug abuse simultaneously and she did not recall the details of two prior rapes because she was too intoxicated.
The defendant argued this activity was the equivalent of prostitution (see People v Wigfall, supra at 83 [defendant claims sexual encounter was consensual in exchange for employment]) and admissible under subdivision (2) which excepts evidence of convictions for prostitution from the proscription of CPL 60.42. This evidence is inadmissible under that subdivision, first, because this activity did not constitute prostitution (People v Block, 71 Misc 2d 714, 716 [prostitution involves the exchange of sex for a fee on a professional basis]), and second, because this activity did not result in convictions for prostitution (see People v Doe, 170 Misc 2d 762, 763 [victim admitted prior acts of prostitution for which she was not convicted]).
This evidence is also inadmissible under subdivision (5), because the allegations upon which this offer of proof is made are too indefinite (see People v Doe, 170 Misc 2d 762 [evidence of victim that she had engaged in prostitution in the past was admissible, where the defendant upon being questioned by the police claimed the alleged rape was an act of prostitution and the victim admitted to having engaged in prostitution in the past to the police]; People v Mc Nab, 144 Misc 2d 612 [claim that the victim willingly participated in the sexual acts charged as rapes and sodomies in exchange for cocaine and had on prior occasions engaged in sex for cocaine is normally admissible to corroborate defense of consent, but because of inadequate identification by witness could only be used on cross-examination to impeach]).
The fifth statement — The complainant admitted that she had contracted the venereal diseases of gonorrhea, chlamydia and herpes.
This statement is inadmissible under subdivision (5) (People v White, supra at 656 [court did not abuse its discretion in precluding the cross-examination of witnesses concerning the victim’s contraction of syphilis, to show motive of victim to falsely accuse the defendant in order to protect her boyfriend from whom she contracted the disease, because it was prejudicial]).
*180 Accordingly, the first and third statements of the complainant are admissible, and the second, fourth and fifth statements are inadmissible.

. The good-faith basis was that the DNA evidence did not specifically identify the defendant as the donor of sperm located in the complainant’s underpants, discussed infra.

. The good-faith basis was the complainant’s admission that she had previously engaged in sexual relations with other men, discussed infra.

. This case also held that court had discretion to admit this evidence, but it did not abuse its discretion.

. This case held that with a proper foundation this statement could be used to cross-examine the victim, or on the defendant’s direct case to show motive to falsify.

. Only People v Williams mentioned subdivision (5), but its applicability to the other cases is apparent.